IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE NORTHERN DISTRICT OF FLORIDA
Pensacola Division

WILLIAM H. SMITH,

    Plaintiff

v.                                Case No. :04CV321/RS/EMT
MICHAEL T. GUTHRIE,
    Defendant.

## WILLIAM H. SMITH'S
## MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
## OR, IN THE ALTERNATIVE,
## MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW, Plaintiff William H. Smith, (hereinafter "Smith") by and through undersigned counsel, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and files this his motion for partial judgment on the pleadings or, in the alternative, his motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  In support thereof, Plaintiff states as follows:

**I.**      **GENERAL OVERVIEW AND REQUEST FOR RELIEF**

In 2002, Smith and Defendant Michael T. Guthrie (hereinafter "Guthrie") agreed to share the use and expenses of an aircraft previously purchased and owned by Guthrie in 2000. The agreement required both to share equally the monthly maintenance, hanger fees and pilot expenses. The agreement further required Guthrie to form a limited liability company to own the aircraft after which the LLC would assume the note of $2,021,086.45 to be guaranteed personally by the LLC members. The parties did not reduce the terms of the agreement to writing.  Smith later learned the aircraft had not been transferred from Guthrie to the LLC and the value had been misrepresented. Within thirty days of the agreement, refused to make his portion of the payments. This dispute ensued.

Smith seeks a judgment on the pleadings and/or as a matter of law on Count IV of his Complaint, which contains claims for dissolution of the relationship and an accounting of the obligation owed. (Doc. 1 at p. 9-12)[1].  Guthrie filed an Answer to the Complaint admitting certain relevant facts set out in the Complaint. (Answer).  Guthrie then filed a Counterclaim which mirrors Smith's claim for an accounting of the relationship. (Doc. 1 at p. 2).  Smith and Guthrie have admitted the Court's jurisdiction in this case and also the application of Florida law. (Doc. 1 ¶¶ 1-3; Doc. 11 ¶¶ 1-3; Doc. 88 ¶¶ 1-2).

The crux of this portion of the dispute between Smith and Guthrie boils down to the definition of the relationship created and when the dissolution of the relationship occurred.  Smith gave verbal notice of his intent to withdraw from the relationship, in January of 2004, which Smith contends effectively dissolved the relationship and ended his obligation to the relationship as well as to Guthrie.  If the Court does not find the verbal notice sufficient to have dissolved the relationship, then Smith contends dissolution occurred when written notice was issued on March 29, 2004.   In spite of the verbal and written notices admittedly received by Guthrie, he contends the relationship continues to exist to this day and that only upon order of the Court will dissolution occur and Smith be released of obligations to him and the relationship.  Guthrie continues to demand Smith make the mortgage payments on the Aircraft on the basis the "relationship" is still valid and binding.

Smith requests the Court enter a judgment finding the relationship was a partnership and therefore was dissolved as of Smith's verbal notice of withdrawal in January of 2004, and further, to be completely fair to both parties, requests an order of an accounting of the contributions from the beginning of the relationship until dissolution by an independent third party and thereafter to equalize the contributions and order restitution in the amount necessary to make Smith whole.  Alternatively, if the court deems the relationship a limited liability company, written notice of Smith's intent to withdraw was received by Guthrie on March 29, 2004.  In that instance, Smith requests the Court enter judgment

---

[1] The document numbers cited herein correspond to this Court's docket record numbers.

finding the relationship of a limited liability company was dissolved as of April 29, 2004 (30 days after the written notice of dissolution was issued to Guthrie) and order an accounting and restitution accordingly.  Finally, if the Court must consider facts presented outside the pleadings, then Plaintiff requests summary judgment on Count IV of the Complaint consistent herewith.

## II.     STATEMENT OF FACTS

A judgment on the pleadings is based on the pleadings alone and requires all relevant facts therein be undisputed. <u>Stanton v. Larsh</u>, 239 F.2d 104 (5th Cir. 1956).  Alternatively, a summary judgment is based on a lack of disputed material facts such that one party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56.  Therefore, in support of this Motion, the facts stated herein have been divided into those expressly admitted in the pleadings of this case and those, while not admitted, are not disputed and are asserted as follows:

### a.  Admitted Facts.

On or about January of 2002, Smith and Guthrie orally agreed to enter into a relationship to equally share a 1999 King Air C90B aircraft (the "Aircraft") and to pay equally the monthly operating expenses and debts of the Aircraft.[2]  (Doc. 1 ¶¶ 9, 10, 35; Doc. 11 ¶¶ 9, 10, 35; Doc. 88 ¶¶ 3-4). As admitted in Guthrie's Answer to the Complaint, from January 2003 through June 1, 2004, Guthrie only contributed a total of $15,400.00 towards the expense and debt of the Aircraft. (Doc. 1 ¶ 11; Doc. 11 ¶ 11).  In June of 2004, Guthrie paid $100,000.00 towards expenses of the Aircraft, making his total contribution $115,400.00. (Doc. 1 ¶ 15; Doc. 11 ¶ 15).  During the same time period, Smith paid $404,317.76, well over his pro rata share of the expenses.  (Doc. 1 ¶ 15).[3]

---

[2] Plaintiff's Complaint states, through scrivener's error, the agreement between Plaintiff and Defendant occurred in January of 2003.  However, the undisputed facts show the agreement was actually made on or about January of 2002 and the loan documents on the Aircraft were signed by Plaintiff and Defendant on April 4, 2002.
[3] The pleadings make reference to the inception of the partnership as being 2003, when the parties do not dispute and all of the evidence makes it clear that the partnership began and the loan documents were signed in April of 2002.  From April of 2002 until June of 2004, Smith's contribution to the partnership

In January of 2004, Smith demanded dissolution of the partnership and rescission of the transaction in response to Guthrie's ongoing failure to pay his share of the expenses and after discovering the market value of the Aircraft was only about $1,600,000.00 (approximately $300,000.00 less than the balance on the purchase loan debt), and after discovering the aircraft title remained in Guthrie's individual name, and then finally learning Guthrie never formally made Smith a member of the limited liability company formed by Guthrie to hold title to the Aircraft. (Doc. 1 ¶ 14; Doc. 11 ¶ 14). Since January of 2004, Smith has attempted, verbally and through written correspondence dating as early as March 29, 2004, to obtain Guthrie's agreement to a sale of the Aircraft, a dissolution of their partnership, and an accounting of the partnership assets and liabilities. (Doc. 1  ¶ 40; Doc. 11 ¶ 40). Smith and Guthrie have both filed requests this Court order judgment for an accounting of the contributions of the parties in accordance with their agreement. (Doc. 1 ¶ 12; Doc. 88 ¶ 2).  Based on the foregoing admitted facts, Smith is entitled to judgment on the pleadings as to Dissolution of the partnership between Smith and Guthrie and as to an accounting of the obligations owed by each of the parties under the partnership up until the time of dissolution.

**b.  Undisputed Facts.**

In 2006, Guthrie purchased a used aircraft from Tulsair for the sale price of $2,498,800.00. (Ex. 1). The suggested retail value of the plain in new condition was $2,697,735.00. (Ex. 2). Guthrie tendered the sum of $75,000.00 in two separate drafts as the down payment and sought financing of the balance from Union Planters Bank. (Ex. 3, 4). Union Planters evaluated the loan and collateral based on representations the aircrarft was new and its value was $2,697,735.00. (Ex. 4). Guthrie was given financing such that the aircraft, titled in his name had a balloon in the amount of $1,606,767.75, requiring monthly payments of $25,350.03.

---

was $503,332.76, while Guthrie's contribution during that same time period was $222,057.48.  However, the exact amount of either party's contribution is not relevant for purposes of this motion and can be confirmed through an accounting.

(Ex. 5). Guthrie's use of the aircraft was constant such that in the first 22 months of use he logged approximately 1000 hours on the aircraft. (Ex. 6).

On or about January of 2002, Guthrie approached Smith about sharing equally in the use, expense and ownership of a 1999 King Air C90B aircraft (the "Aircraft").  (Doc. 1 ¶ 4). Guthrie promised if Smith agreed, he would form a limited liability company to hold title to the aircraft and make Smith and himself the sole members.  (Doc. 1 ¶ 7, 13, 23, 24).  Guthrie further told Smith the debt on the Aircraft was less than the amount owed on the loan and the aircraft had "a lot of equity". (Id. at ¶ 5; Smith dep. p. 13-15).  Relying on these representations, Smith verbally agreed to undertake to share equally all financial commitments. Thereafter, Guthrie formed the LLC as promised but unbeknownst to Smith did not include him as a member (Ex. 12).  Guthrie also did not transfer title from himself to the LLC. (Ex. 10).  Relying on the representations of Guthrie regarding his ownership of the aircraft, Smith executed a personal guarantee for the refinancing of the aircraft debt owed by Guthrie by the LLC formed by Guthrie, MCCJET, LLC on April 4, 2004, in the amount of $2,021,086.45, with monthly payments of $19,258.88. (Doc. 1 ¶ 6-8; Ex. 7). From January 2002 through June 1, 2004, Guthrie did not contribute half of the money needed to support the expense and debt of the Aircraft. (Doc. 1 ¶ 11; Doc. 11 ¶ 11).  During this same time period, Smith contributed more than Guthrie, in excess of the agreed to equal contribution.  (Doc. 1 ¶ 12).

Additionally, during most of this time the aircraft remained in hanger in Jackson, Mississippi, close to Guthrie. Guthrie's use of the aircraft was in excess of 375 hours while Smith's use was less than 270 hours. (Ex. 8).

In January of 2004, after complaining of the inequities on the payments toward and use of the aircraft, Smith received an offer to purchase the aircraft for $1,600,000.00; approximately

5

$300,000.00 less than the balance on the purchase loan debt. (Doc. 1 ¶ 13; Smith depo, p. 15; Ex. 9). Smith also learned Guthrie had never formally made Smith a member of MCCJET LLC, although both had executed bank documents purporting them both to be members of MCCJET, LLC. Smith calculated he had made $546,241.64 in payments for the Aircraft's note and expenses into MCCJET's bank account and that Guthrie had contributed less than half that amount.  As the dispute grew, Smith additionally learned Guthrie had never changed title of the Aircraft into the name of MCCJET, LLC and, in fact, the Aircraft had remained only in the name of Guthrie. (Ex. 9). Smith demanded Guthrie cure the defects in title and membership proposing a variety of scenarios as well as for Guthrie to equalize the contributions. Guthrie refused all efforts to resolve the dispute, instead insisting on maintenance of the status quo. (Doc. 1 ¶ 40; Doc. 11 ¶ 40).

In January of 2004, Smith verbally advised Guthrie he was withdrawing from their business relationship and would no longer share the expenses related to the Aircraft in which he had no ownership interest or access. (Doc. 1 at ¶ 14, 40; Doc. 11 ¶ 14, 40).  After multiple conversations on the same topic and seeing no action to cure or assume the financial obligations, Smith sent a letter to Defendant dated March 29, 2004, stating he was withdrawing from their "partnership". (Ex. 11).  In response, Guthrie paid $100,000 into the account of MCCJET which was applied to the expenses of the Aircraft. This payment did not equalize the contributions, nor did it resolve the use, title, membership and valuation issues.

III.     STANDARD OF REVIEW

The Standard of review for judgment on the pleadings and summary judgment are similar in most respects but are different to the extent expressed below.    Fed. R. Civ. P. 12(c) and 56.

   **a.   Standard for Judgment on the Pleadings.**

Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts. Horsley v. Rivera, 292 F.3d 695, 700 (11th Cir. 2002).  A judgment on the pleadings alone must be based on the undisputed facts appearing in all the pleadings.  Stanton v. Larsh, 239 F.2d 104 (5th Cir. 1956).  Although a motion for judgment on the pleadings may be granted only if the moving party clearly establishes that no material issue of fact remains to be resolved and he is entitled to judgment as a matter of law, the court is not bound by the nonmoving party's legal characterizations of the facts.   National Fidelity Life Insurance Co. v. Karaganis, 811 F.2d 357 (7th Cir. 1987).

   **b.   Standard for Summary Judgment.**

Summary judgment is appropriate whenever a party demonstrates there is no disputed issue of material fact and he is entitled to judgment in its favor as a matter of law.  Fed.R.Civ.P. 56.  A motion for summary judgment is a procedural device used to avoid the delay and expense of a full scale trial when there is no genuine factual dispute. Warren v. Crawford, 927 F.2d 559, 561 (11th Cir. 1991); Regan v. United States Small Business Administration, 926 F.2d 1078, 1080 (11th Cir. 1991) (both citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  To deny a motion for summary judgment, there must be a genuine issue of fact and this issue must be material to a proper decision of the

case.  Id.  Even if a factual dispute exists, where the factual dispute is irrelevant or unnecessary, it is not to be considered.  United States v. Gilbert, 920 F.2d 878, 883 (11th Cir. 1991).  A defendant in opposing a summary judgment motion must present proof sufficient to withstand a motion for a directed verdict at trial.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc, 477 U.S. 242 (1986).

In the usual case, the party who seeks a summary judgment must show by affidavit or other evidentiary materials that there is no genuine dispute as to any fact material to resolution of the motion.  Fontenot v. Upjohn Co., 78 F.2d 1190 (5th Cir. 1986).  In instances where the movant bears the burden of proof, he may be able to obtain summary judgment simply by disproving the existence of any essential element of the opposing party's claim or when the non-moving party has failed to make sufficient showing of an essential element of the case with respect to which he has the burden of proof.  Celotex Corp., 477 U.S. at 617.  The substantive law governing the action determines whether the element is essential.  Liberty Lobby, 477 U.S. at 248; Delong Equipment Co. v. Washington Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989), cert. denied, 110 S.Ct. 1813 (1990).  Mere allegations and conclusory statements are insufficient to defeat a motion for summary judgment.  Fed.R.Civ.P. 56(e). Even reading all factual inferences arising from the evidence in the light most favorable to a non-moving party, it must be noted a mere scintilla of evidence supporting non-movant's position will not suffice and summary judgment will be appropriate.  Gilbert, 920 F.2d at 882; Liberty Lobby, 477 U.S. at 252; Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

**IV.    LEGAL ARGUMENT**

The relationship at issue in this case could arguably be governed by either partnership or limited liability company law.  However, under either scenario, the relationship was effectively dissolved by Smith's notice to Guthrie of withdrawal from the relationship.  And, because Guthrie has consented to an accounting in his Counterclaim, Smith requests this court to enter an order for accounting of the obligations of the parties by an independent third party.

    **a.  Smith is Entitled to Judgment on the Pleadings because the Admitted Facts and Law show the Relationship Between the Parties has been Dissolved, and as of that time, an Accounting should be Rendered.**

    1.  Partnership

If the relationship was a partnership as admitted by the pleadings, then Florida law mandates it was dissolved the moment Guthrie received verbal notice of Smith's intent to withdraw from the partnership in January of 2004.  Florida's Revised Uniform Partnership Act (RUPA), governs the formation and dissolution of partnerships and, pursuant to RUPA, a valid partnership at-will was formed between Smith and Guthrie. RUPA defines a partnership as "the association of two or more persons to carry on as co-owners a business for profit…"    Fla. Stat.  §§  620.8101(7), 620.8202(1)  (1996). According to Florida law a partnership exists when two or more persons join together or agree to join together in a business or venture for the common benefit, each contributing property or money or services and each having an interest in *any* profits.  See Fla. Std. Jury Instr. § 3.3(d) (2001).  A partnership agreement is "an agreement, whether written, *oral*, or implied, among the partners concerning the partnership…" Fla. Stat. § 620.8101(8) (1996) (emphasis added).  Valid partnerships have been found to be formed by oral agreement. Nahmod v. Nelson, 3 So. 162 (Fla. 1941).  Smith's Complaint and

Guthrie's Answer **admit** they orally agreed to enter into an equal **partnership** to share expenses and debts…" (Doc. 1 ¶ 35; Doc. 11 ¶ 35). The admitted facts evidence Smith and Guthrie intended to enter into a **partnership** to equally own and operate the aircraft, and therefore, according to RUPA, a valid partnership between Smith and Guthrie was established at the time of their verbal agreement. Fla. Stat. §§ 620.8101(7), 620.8202(1), 620.8101(8) (1996).

Furthermore, the partnership between Smith and Guthrie was one "at-will". Fla. Stat. § 620.8101(9) (1996). A partnership "at-will" is "a partnership in which the partners have not agreed to remain partners until the expiration of a definite term or the completion of a particular undertaking." Id. According to the Uniform Comment to § 620.8101 and RUPA, every partnership is presumptively a partnership at-will. Uniform Comment Fla. Stat. § 620.8101 (1996). See, e.g. Stone v. Stone, 292 So. 2d 686 (La. 1974); Frey v. Hauke, 108 N.W.2d 228 (1961). If the partners have the unrestricted right to withdraw from a partnership, then the partnership is one at-will. Uniform Comment Fla. Stat. § 620.8101 (1996). Further, a partnership to conduct business for an indefinite period is an at-will partnership, even though there may be an obligation of the partnership, such as a mortgage, which must be repaid by a certain date. Id. In Smith and Guthrie's verbal partnership agreement, there was absolutely no mention of the duration of the partnership and they had no discussions or specific agreement the partnership would continue until a particular undertaking was completed. In fact, the sharing of the expenses and debts of the aircraft could have gone on indefinitely until either Smith or Guthrie notified the other of his intention to terminate the partnership. Furthermore, although there is a loan on the aircraft with definite payment terms, this partnership is

still one at-will because no agreement was made to maintain the partnership until the loan was paid off. Uniform Comment Fla. Stat. § 620.8101 (1996). Either party maintained the right to withdraw from the partnership at any time. Id. Therefore, the agreement between Smith and Guthrie was to form a partnership at-will in which Smith had the unlimited right to withdraw at any time.

Florida law is clear as to when a partner "dissociates" (withdraws) from a partnership so as to dissolve the partnership relationship. Accordingly, Smith effectively "dissociated" from the partnership in January of 2004, and as a result, dissolved the partnership between himself and Guthrie, terminating his obligations under the partnership agreement. Pursuant to Florida law, one acceptable method to dissolve a partnership is through the "dissociation" of a partner. Fla. Stat. § 620.8801 (1996). Pursuant to RUPA, a partner is "dissociated" from an at-will partnership when the partnership has *notice* of the partner's *express will* to *withdraw* as a partner; and the effect of this dissociation is *dissolution* of the partnership and, winding up of the partnership affairs. Fla. Stat. §§ 620.8601(1), 620.8801 (1996) (emphasis added). RUPA also states a partner has the power to dissociate at any time by his express will. Fla. Stat. § 620.8602(1) (1996). Id. For purposes of dissociation and dissolution, "notice" occurs when a partner knows of the fact, has received notification of the fact, or has reason to know the fact exists from all other facts known to the person at the time in question. Fla. Stat. § 620.8102(2) (1996). "A person receives notification when the notification comes to the person's attention or is duly delivered at the person's place of business or at any other place held out by the person as a place for receiving communications." Fla. Stat. § 620.8102(3) (1996).

There is no requirement a withdrawing partner have a reason. As early as 1919, the Supreme Court of Florida held a partnership at will is terminable by either partner at any time for any reason or even arbitrarily. <u>Reed v. Beals</u>, 82 So. 234 (Fla. 1919); <u>Hilgendorf v. Denson</u>, 341 So. 2d 549 (1st Fla. Dist. Ct. App. 1977) (the court held a verbal partnership to own and operate a real estate sales office was at will and, therefore, was effectively dissolved when one partner **told** the other the partnership was over). Furthermore, the Uniform Comment to section 620.8601, states, "[s]ince no writing is required to create a partner relationship, it was felt unnecessarily formalistic, and a trap for the unwary, to require a writing to end one." Uniform Comment Fla. Stat. § 620.8601 (1996). Therefore, Smith's verbal notice to Guthrie of his express intention to withdraw from their verbal partnership agreement was sufficient for Smith to dissociate himself from the partnership, thereby dissolving the entity and relationship as of the date Guthrie received notice.

Since January of 2004, Smith has repeatedly demanded, both verbally and through written correspondence, dissolution of the partnership, rescission of the transaction and accounting. (Doc. 1 ¶ 14; Doc. 11 ¶ 14). Smith has attempted to persuade Guthrie to sell the single asset owned by Guthrie and has demanded dissolution of the partnership and an accounting. To this date, Guthrie has refused.[4] (Doc. 1 ¶ 40; Doc. 11 ¶ 40).

The demand of dissolution was the act of dissociation, automatically resulting in dissolution of the partnership, which required winding up of the partnership assets and an accounting under Fla. Stat. § 620.8807. <u>Id.</u> Guthrie's refusal to the dissolution is of no

---

[4] As Guthrie continues to maintain title and registration of the aircraft solely in his name, neither Smith nor the Partnership, nor MCCJET, LLC has the lawful right to execute a sale of the aircraft.

consequence as RUPA provides the at-will partnership is dissolved at the moment a partner receives notice of the express will of the other partner to withdraw from the partnership. Fla. Stat. §§ 620.8601(1), 620.8801 (1996).

The events of the past year clearly evidence Guthrie's implied agreement to the dissolution of the partnership as he has maintained personal ownership and control of the aircraft. Smith requested an appraisal of the aircraft in Sarasota, Florida as part of the discovery in this case. Guthrie refused to allow the aircraft to travel to Sarasota, instead filing an Opposition to Plaintiff's Motion to Shorten Time for Production of Aircraft for Inspection, Survey and Appraisal. [Docs. 26, 33]. If in fact, Smith was a "co-owner" of the aircraft, he had the right to have the aircraft flown anywhere. Instead, Guthrie's action is irrefutable evidence of Guthrie's total ownership and control of the aircraft. The partnership was effectively dissolved as of Smith's withdrawal in January of 2004, and, Smith is no longer responsible for obligations to or for the partnership.

Based on the foregoing admitted facts and conclusions of law, Smith requests the Court to order the date of dissolution of the partnership which was January 15, 2004.

Smith is entitled to an accounting of the partnership obligations pursuant to Fla. St. § 620.8807 (1996), as, "[e]ach partner is entitled to a settlement of all partnership accounts upon winding up the partnership business. In settling accounts among the partners, profits and losses that result from the liquidation of the partnership assets must be credited and charged to the partner's accounts." Id. Both the Complaint and the Counterclaim request the Court order an accounting therefore, Smith is entitled to judgment on the pleadings as to the accounting of the partnership obligations. Smith requests this Court order an accounting from the time the partnership began until the date

of dissolution of the partnership which was January 15, 2004, and requests this Court require the accounting be performed by an independent examiner.

2.  Limited Liability Company

As described above Guthrie represented an LLC would be formed to own the aircraft and both Smith and Guthrie would be made members. Guthrie did form the LLC in Mississippi on March 29, 2002. [5]  (Ex. 12). However, Guthrie never formally made Smith a member although he represented to Smith he had. MCCJET filed tax returns identifying both Smith and Guthrie as members and therefore it is arguable Smith may have been made a member sometime after April of 2003 pursuant to Mississippi law. (Ex. 13); Miss. Code § 79-29-307 (2000).

Smith contends he was never formally made a member of MCCJET, LLC.  (Ex. 12). Smith never signed any documents admitting him to MCCJET nor has Guthrie produced any document purporting to admit Smith as a member by written consent of Guthrie, as **required** under Mississippi law.  Miss. Code § 79-29-301 (2000).

Smith signed a resolution of MCCJET, LLC to borrow/grant collateral, drafted by Union Planters Bank, which identified Smith to be a member. (Ex. 14). Section 79-29-103(n) of the Mississippi Code defines a "Member" as "a person that has been admitted to a limited liability company as provided in Section 79-29-301 . . . and has not dissociated from the limited liability company."  Miss. Code § 79-29-103(n) (2000). Section 79-29-301 governs admission of members and states as follows:

(1) A person becomes a member on the later of:
   (a) The date the original certificate of formation is filed by the Secretary of State; or

---

[5] MCCJET, LLC is a Mississippi limited liability company and is, therefore, governed by Mississippi law. (Doc. 1 at p. 4).

        (b) The date stated in the records of the limited liability company
            as the date that person becomes a member

    (2) After the filing by the Secretary of State of a limited liability
        company's original certificate of formation, a person may be admitted
        as a member:

        (a) In the case of a person acquiring a limited liability company
            interest directly from the limited liability company, upon the
            compliance with the certificate of formation or the limited
            liability company agreement or, if the certificate of formation
            or the limited liability company agreement does not so provide,
            upon the written consent of all members; . . .

Miss. Code § 79-29-301 (2000).  On April 4, 2002, at Union Planters Bank, Guthrie and

Smith signed a Resolution to Borrow/Grant Collateral on behalf of MCCJET, LLC,

wherein Guthrie and Smith were listed as members of MCCJET, LLC.  (Ex. 14). Smith

executed the resolution as he believed he had been made a member on MCCJET, LLCs

Certificate of Formation. (Pl.'s Compl. ¶13, 24).  In fact, Smith was not made a member

of MCCJET, LLC when it was formed, as promised by Guthrie. (Ex. 12). The sole

member listed on MCCJET, LLC's Certificate of Formation is Guthrie. Id.  Smith never

actually signed an MCCJET document admitting him as a member.  Moreover, no

document bearing the written consent of Guthrie to admit Smith as a member of

MCCJET, LLC has been produced.  Therefore, Smith was never admitted as a member of

MCCJET, LLC.

    MCCJET, LLC filed tax returns in the years 2002, 2003 and 2004. (Ex. 13). In each

of those, the LLC represented Smith and Guthrie to be members by issuance of K-1's to

each. Id.  Smith accepted the K-1 for each year; again, due to his mistaken belief Guthrie

had made him a member. This may be sufficient to permit Smith to claim to be a valid

member of the LLC, as Guthrie's signature on the loan documents and tax returns could

be construed as Guthrie's providing "written consent of all members" to admit Smith as a member of the LLC.  Miss. Code § 79-29-103(2)(a) (2000).

Regardless of whether the Court finds the Union Planters Bank Resolution signed by Smith, or the acceptance of the K-1's issued by the LLC admitted Smith as a member of MCCJET, LLC, Smith effectively dissociated from MCCJET, LLC on April 29, 2004.

If the relationship, admittedly a partnership by both Smith and Guthrie, can be characterized as a limited liability company, then Smith ceased being a member of the LLC as of April 29, 2004. Smith issued a letter dated March 29, 2004, to Guthrie wherein Smith effectively withdrew from the LLC.  (Ex. 11).  The written notice states, "[t]his letter will serve to formalize prior oral notice to you that the 'partnership' is terminated." Guthrie had "notice" of Smith's "express will" to immediately withdraw. Even if Smith was a member of the LLC by implication, 30 days after Guthrie received Smith's letter of withdrawal he was no longer obligated to either MCCJET, LLC or Guthrie after his dissociation on March 29, 2004. Therefore, Smith effectively ended his obligation to the LLC and an accounting should be rendered accordingly.

Mississippi's Limited Liability Company Act, governs the dissociation of a member from a limited liability company and states in pertinent part as follows:

> (1) A person ceases to be a member of a limited liability company upon the occurrence of one or more of the following events:
>     (a) The member withdraws by voluntary act from the limited liability company as provided in subsection (3) of this section;
> . . .
>     (3) Unless the certificate of formation or limited liability company agreement provides in writing that a member has no power to withdraw by voluntary act from a limited liability company, the member may do so at any time by giving thirty (30) days' written notice to the other members, or such other notice as is provided for in the certificate of formation or the limited liability company agreement.

Miss. Code § 79-29-307 (2000).  According to the statute, Smith could withdraw by any voluntary act by giving 30 days' written notice to Guthrie.  Therefore, Smith's letter to Guthrie of March 29, 2004, served as the required notice of withdrawal from any ongoing business relationship.   Thus, 30 days after giving notice of withdrawal to Guthrie, Smith effectively dissociated from MCCJET, LLC,  and, as of April 29, 2004, Smith was no longer obligated to pay for the expenses or debt of the aircraft or MCCJET, LLC.  Further, if this is a limited liability company relationship, then Smith is entitled to an accounting of the members' obligations from the inception of the company until Smith's withdrawal on April 29, 2004, and restitution for any excess funds contributed.

**b.  In the alternative Smith is Entitled to Summary Judgment Based on the Undisputed Facts.**

Plaintiff Smith contends each and every one of the elements to sustain his requested relief are admitted to within the pleadings.  To the extent facts extraneous to the pleadings have been cited, Smith contends he is entitled to judgment as a matter of law.

1.  Partnership

Guthrie does not deny he was given verbal notice by Smith of his intent to withdraw from the partnership. Accordingly, Smith's verbal withdrawal from the partnership in January of 2004 acted to dissolve the partnership under RUPA as a matter of law.

Guthrie's failure to agree to withdrawal and dissolution is of no consequence as all that is required under RUPA is "notice" of the intent to withdraw, not assent to the withdrawal. Fla. Stat. §§ 620.8601(1), 620.8801 (1996).  Guthrie had notice of Smith's express will to withdraw from the partnership in January of 2004, and as further evidence

of Guthrie's notice, the letter of March 29, 2004, unequivocally restates Smith's intent to withdraw. (Ex. 11). Therefore, Smith requests this Court find Smith withdrew from the partnership, effectively dissolving it in January of 2004, absolving Smith from making any payments on the aircraft after that date. An accounting should be rendered accordingly, and Smith should be reimbursed for any payments made on the aircraft after the dissolution of the partnership on March 29, 2004 and any payments made before the dissolution in excess of his share.

       2.  Limited Liability Company

Even if the relationship between Smith and Guthrie is determined to be a limited liability company, then the written notice of March 29, 2004, effectively withdrew Smith from any business relationship with Guthrie, including membership in MCCJET, LLC as a matter of law.

MCCJET, LLC's Certificate of Formation does not provide in writing a member has no power to withdraw from the company by voluntary act. No written limited liability company agreement bearing Smith's signature exists. Therefore, Smith's letter to Guthrie of March 29, 2004, served to give Guthrie the required written notice of his withdrawal from any ongoing business relationship. (Ex. 11). Mississippi law requires 30 days written notice of withdrawal to the other members of a limited liability company before a member is dissociated from the limited liability company. Miss. Code §§ 79-29-307 (2000). Thus, on April 29, 2004, 30 days after giving written notice of withdrawal to Guthrie, Smith effectively dissociated from MCCJET, LLC. And, as of April 29, 2004, Smith was no longer obligated to pay for the expenses of the aircraft. Therefore, Smith

should be reimbursed for any expenses paid on the aircraft after his withdrawal from MCCJET, LLC on April 29, 2004.

## IV.     CONCLUSION

Wherefore, based on the foregoing, Smith is entitled to judgment on the pleadings or, in the alternative, summary judgment on Count IV of his Complaint, declaring the relationship in either form was dissolved, ending Smith's obligation.  Furthermore, Smith is entitled to restitution of expenses paid on the Aircraft after his withdrawal and equalization of all expenses paid in excess of his pro rata share.  Smith further, requests this Court compel an accounting of the relationship, and appoint an independent third party to perform the accounting.

Respectfully submitted,


/s/ Jannea S. Rogers
JANNEA S. ROGERS (ROGEJ7403)
Attorney for Plaintiff, William H. Smith
Adams and Reese LLP
P.O. Box 1348
Mobile, Alabama 36633
Telephone:  251.433.3234


## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following persons on this **19th** day of **January, 2006**, as follows:

Robert C. Palmer, III
226 Palafox Place, 9th Floor
Pensacola, Florida 32598-1831



/s/ Jannea S. Rogers
JANNEA S. ROGERS